## FORD et al. v. WICHITA FALLS & S. RY. CO. (No. 10311.)

(Court of Civil Appeals of Texas. Fort Worth. June 2, 1923.)

**1. Trial ⬳350(6)—Failure to submit a special issue not raised by pleadings or evidence held not error.**

In an action against a railroad company for damages to crops caused by the company's negligent leaving open of fences so that stock entered on plaintiff's land and destroyed his crops, where plaintiff did not plead any damage by reason of the destruction of straw and stubble, failure to submit such an issue as a separate item was not error, under Rev. St. 1911, art. 1985.

**2. Appeal and error ⬳1062(5)—Submission of irrelevant, immaterial special issue held harmless error.**

In an action against a railroad company for damages to plaintiff's crops caused by the company's negligent leaving down of fences and gates while constructing a part of its road, submission by the court of the special issue as to whether any part of plaintiff's crops were destroyed by plaintiff's own stock, and if so what proportion, *held* harmless error in view of a finding that defendant was liable for all the damage done and caused by the defendant and its employés tearing down the fences or leaving the gaps open.

**3. Railroads ⬳114(2)—Evidence held not to authorize recovery for damages to crop by cattle.**

In an action against a railroad for damages to crops by cattle going through gaps in fences, *held*, on the evidence, that plaintiff was not entitled to recover for any damage occurring after the completion of the railroad and the repairing by it of the fences.

**4. Appeal and error ⬳218(2)—Party failing to submit special issue cannot complain of form used by court.**

A litigant entitled to recover on a special issue should submit such issue, and in the absence of such submission or refusal thereof cannot complain if the issue as submitted is not properly worded or sufficiently comprehensive.

**5. Trial ⬳85—Objection to testimony as a whole cannot be sustained where part thereof not subject to such objection.**

Admission of testimony objected to on the ground that it constituted a conclusion of the witness is not error where the objection was to the whole of the testimony and clearly inapplicable to part of it.

**6. Appeal and error ⬳1050(1)—Admission of testimony as to value of grain by engineer of railroad held not reversible error.**

In an action against a railroad for damages to plaintiff's crops, testimony by an engineer of the railroad as to values per bushel of certain grains at the time of the loss, which he stated he had learned from market reports and inquiry at an elevator, *held* not inadmissible, or at least harmless error, in view of similar testimony by the bookkeeper of the elevator company, which was admitted without objection.

**7. Railroads ⬳114(2)—Testimony as to opening fences held admissible.**

In an action against a railroad for damages to crops by cattle entering through gaps in fences, where defendant pleaded that oil field men were responsible for leaving the gates open and for tearing down the fences, testimony as to the actions of such oil men tending to establish their actions in such matter *held* properly admitted.

**8. Evidence ⬳142(5)—In action for damages to crops, testimony as to wages paid for man and team held admissible on cost of harvesting.**

In an action against a railroad for damages to plaintiff's crops, testimony, by a witness working in oil field, that he was then being paid $12.50 per day for man and team, *held* admissible as bearing upon what it would have cost plaintiff to harvest his crops had they not been destroyed.

Appeal from District Court, Young County; H. R. Wilson, Judge.

Action by H. M. Ford and others against the Wichita Falls & Southern Railway Company. From a judgment for plaintiffs in insufficient amount, they appeal. Reformed and affirmed.

Stine & Stine, of Henrietta, and J. A. Moore, for appellants.

Bullington, Boone, Humphrey & Hoffman, of Wichita Falls, and Arnold & Arnold, of Graham, for appellee.

BUCK, J.  H. M. and D. A. Ford filed suit in the district court of Young county against the Wichita Falls & Southern Railway Company, alleging that H. M. Ford was the owner of 500 acres of land situated in Young county, and that as such owner he leased in January, 1921, 75 acres thereof to D. A. Ford, his son, who planted and cultivated the same as follows: 20 acres of wheat, 20 acres of corn, and 12 acres of oats. He alleged that under ordinary conditions in

existence in that community he would have made 200 bushels of oats, 260 bushels of wheat, and 700 bushels of corn. The value per bushel of each kind of grain was alleged, and that D. A. Ford was to have one-fourth of the crop and H. M. Ford was to have three-fourths. It was alleged that during the months of May, June, and July, 1921, defendant constructed a railroad in and across plaintiffs' land, and that while so constructing said railroad defendant carelessly and negligently tore down the fence around the farm of H. M. Ford and that stock entered said land and destroyed the crops of plaintiffs to the damage to H. M. Ford in the sum of $500, and to D. A. Ford in the same amount. It was further alleged that, through the negligence and carelessness of the defendant, stock were caused and permitted to enter the pasture of the plaintiffs containing 400 acres of grass, and that said stock ate and destroyed the grass of plaintiffs, for which they asked damages in the sum of $500.

The defendant answered by way of a general demurrer and a general denial, and specially pleaded that during the time in question and prior thereto there was a great deal of work going on in and about the premises of the plaintiff, such as laying pipe lines, scouting wells, and other general oil field work, and that said work was at the solicitation of the plaintiff either directly or indirectly or with the consent of the plaintiff either directly or indirectly, and that if any damage was done to the plaintiff that same was done on account of the acts and conduct of those engaged in the oil field work.

The cause was tried by a jury on special issues, and in response to the issues submitted the jury found:

(1) That the defendant was guilty of negligence in maintaining the fences on plaintiff's premises and that such negligence was the proximate cause of the damage to plaintiff's crops and grass.

(2) That the plaintiffs would have produced, if such corn had been allowed to mature, 225 bushels, and that the reasonable market value thereof at the time it would have matured was 70 cents a bushel, and that the reasonable cost of cultivating, gathering, and marketing said corn would have been $75.

(3) That plaintiffs would have produced, if the wheat had been allowed to mature, 144 bushels, and, at the reasonable market value thereof at the time of maturity, it would have cost to harvest, thresh, and market $74.

(4) That plaintiffs' oats would have produced 160 bushels, and that the reasonable market value of such oats at the time of maturity was 40 cents a bushel, and that the cost of harvesting, threshing and marketing said oats would have been $29.98.

(5) That 50 per cent. of the damages done to plaintiffs' crops and grass was done by other people or causes than the defendant and its employés.

(6) That the defendant's employés in the exercise of ordinary care could have reasonably foreseen and anticipated that, as a result of their failure to maintain the fences over their right of way, the plaintiffs would sustain damage to their crops, and that such negligence was the direct and proximate cause of the stock getting into plaintiffs' land.

(7) That the reasonable market value of the grass on plaintiffs' land just before the defendant began the construction of its railroad was 50 cents an acre, and 25 cents an acre when defendant completed the construction of its railroad. And that there was 400 acres of grass damaged; that the acts of defendant and its employés caused 50 per cent. of this damage.

Upon this verdict, the court entered a judgment for plaintiffs in the sum of $193.26, together with all costs of the suit, one-fourth to H. M. Ford and three-fourths to D. A. Ford. The plaintiffs have appealed.

[1] Under their first proposition, appellants complain of the failure of the trial court to submit the value of the oats and wheat straw as an item separate from the value of the threshed oats. Another proposition complains of the failure of the court to submit to the jury the issue of the value of the wheat and oat stubble. A sufficient answer to these propositions is that plaintiffs did not plead that they suffered any damage by reason of the destruction of the straw and stubble. Therefore they could not recover for such items, and it would have been improper to submit to the jury such issues. They specially alleged the number of bushels of the several kinds of grain which they would have raised per acre, and the reasonable market value per bushel thereof. In a case tried upon special issues it is the duty of the court to submit the cause upon such special issues as are raised by the pleadings and evidence in the case. Article 1985, Rev. Statutes; Dermott Townsite Co. v. Wooten (Tex. Civ. App.) 193 S. W. 214; Patterson v. Bushong (Tex. Civ. App.) 196 S. W. 962, 964, writ denied.

[2] Another proposition objects to the submission by the court to the jury of the following special issue:

"State whether or not any part of plaintiffs' oats, wheat, or corn was destroyed by plaintiffs' own stock, and, if so, what portion?"

The objection to the submission of this issue is that the issue is irrelevant and immaterial, and tended to mislead the jury, etc. While in the absence of negligence on the part of plaintiffs the defendant would be liable for any damage to the growing

crops caused by plaintiffs' cattle as well as the cattle of other persons, yet, in view of the finding of the jury that defendant was liable for all of the damage done and caused by the defendant and its employés tearing down the fences or leaving the gaps open, we think the submission of this issue was harmless error.

[3] The court submitted this issue:

. "What was the reasonable market value of said grass just before the defendant began the construction of its railroad over plaintiffs' land, and what was the reasonable market value of said grass after the defendant completed the construction of said railroad?",

[4] Appellants objected to the submission of this issue on the ground that the submission of said issue was irrelevant, immaterial, and calculated to confuse and mislead the jury, and that it did not tend to determine any material issue in the cause and was not a proper test of the amount of plaintiffs' damages. Appellants quote testimony to show that the railroad was under construction from about the middle of May to about the middle of July; that the negligent injury of plaintiffs continued until suit was filed, or later; that H. M. Ford testified that the negligent leaving down of the fences and the resulting injury to plaintiffs' grass continued until Christmas, or January following. He further testified that the rental value of the grass destroyed was $1 per acre. In his testimony, he does not state whether his estimate of the rental value is by the month or by the year, or for the period in which he claims the cattle got into his premises by reason of the negligence of the defendant's employés. Appellants claim that the submission of the issue in the form given eliminated from the jury the damage caused by the cattle subsequent to the construction of the railroad. It is not plain that the evidence showed that the defendant or its employés left down the wire gate across its right of way, and left gaps down subsequent to the time of the construction of the railroad, and the defendant would not be liable for damages that were not proximately the result of its negligence. It was the duty of plaintiffs to keep the cattle out of their premises, and they cannot recover against the defendant for grass eaten by the cattle entering the premises after the defendant had constructed its right of way and tracks and had put up the gates across the same, and had repaired any gaps made in plaintiffs' fences. We do not think under the pleading and testimony that plaintiffs were entitled to recover any damages by reason of the grass eaten or destroyed by the cattle after the defendant's employés had completed the railroad. At any rate, if they were entitled to recover any amount for any time subsequent to the completion of the defendant's railroad, such an issue should have been submitted by the plaintiffs, and, in the absence of such submission and refusal thereof, appellants cannot complain of the submission of an issue improperly worded or not sufficiently comprehensive.

[5] While defendant's engineer McFarland was on the stand, counsel for defendant asked them: "Did you use every effort to keep the gaps up?" To which the witness answered: "We used these efforts; we wrote the contractors that they must keep the gaps up; the resident engineer in charge of it made trips over it to see that they were being kept up. In every possible way we attempted to protect the property rights of the parties through whose land we went." The objection to such testimony is that it is the conclusion of the witness. That part of the answer, "that we wrote the contractors that they must keep the gaps up; the resident engineer in charge of it made trips over it to see that they were being kept up" —is certainly not subject to the objection made. Since the objection is to the answer as a whole, and a part of it is not subject to the objection, under the authorities, we overrule the assignment.

[6] We do not think the testimony of H. F. McFarland, as to what was the average yield of wheat, oats, and corn in that territory, was inadmissible on the ground that said witness did not qualify, nor that reversible error is shown in the admission of the testimony of the same witness as to the market price of the wheat, oats, and corn between August 15th and 20th. Mr. McFarland testified that he learned of the price of wheat, oats, and corn from the market reports, and by inquiring of the Graham Mill & Elevator Company. Mr. Hayden testified that he was the bookkeeper for said company, and that the market value of wheat during the latter part of June and the first of July, 1921, was from 95 cents to $1.05 per bushel, and that the market price of oats was from 40 cents to 45 cents per bushel, and that corn was from 68 cents to 70 cents per bushel. That they paid $1 per bushel for wheat on June 30th and on the 2d of July they paid $1 per bushel. The jury found that corn was worth at its maturity 70 cents per bushel, wheat $1 per bushel, and oats 40 cents per bushel. No objection was made to the testimony of Hayden. At most, the admission was harmless error. Stone v. Light (Tex. Civ. App.) 228 S. W. 1108.

[7] The defendant pleaded in its answer that the oil field men were responsible for leaving the gates open and tearing down the fences of the plaintiff during the time inquired about. On the trial the defendant inquired of its witness Burgess: "Did you have any trouble with the oil field boomers with reference to your gates and fences?" The plaintiffs objected because it was irrelevant, immaterial, and prejudicial, which

objection was overruled. The witness was allowed to answer: "Yes, sir; sometimes they would leave the gates open. There are not many gates in an oil field that are kept up." Defendant asked: "Why?" Witness answered: "They just won't keep them up." Defendant asked: "Can you keep them up in an oil field?" Witness answered: "I could not say. It would be a pretty hard proposition." Defendant asked: "Did you have any trouble keeping up your fences around your field?" Witness answered: "When the railroad camp first came I had a little trouble and I went down and raised Old Billie about it and did not have much more trouble from then on." Witness McCluskey testified that he did not think it possible for a man to keep up his fences in an oil field. The witness Burgess testified that the oil people traveled along, by and through the plaintiffs' property during that time, and sometimes they would follow a road and sometimes they wouldn't. Plaintiff D. A. Ford testified that in June, 1921, the Prairie Oil Company laid a pipe line through his property; that is, through the corner of his oats and right through the corner of his wheat. He further testified that there were three or four pipe lines across his land, and the size of said pipe lines was about four inches. He further testified:

"It is a fact that the teamsters and oil operators when they get to a fence they just go over it, like there wasn't any fence there; you can drive in any direction out there without opening a gate."

Much other testimony to the same effect is in the statement of facts. We do not think there was any error in the admission of the testimony complained of.

[8] While the witness Burgess was on the stand, defendant asked him what was the market value of a man and his team during the months of June and July, 1921. Witness answered: "Well, I was working in the oil field; they were paying me $12.50 per day." We think this testimony was admissible as bearing what it would have cost the plaintiffs to harvest their crops. While the plaintiffs might have gotten men and teams at a lower price than they received in the oil field to assist them in harvesting their crops, yet we think the testimony was admissible as tending to show what it would have probably cost them to gather their crops.

Appellee urges in its cross-assignment that the judgment is excessive to the amount of $50. According to the verdict of the jury, plaintiffs would have raised 225 bushels of corn at 70 cents a bushel, which would have amounted to $157.50. The jury further found that the cost of harvesting the corn would have been $75, which would have left $82.50 clear; that they would have raised 144 bushels of wheat, which was worth $1 per bushel, and the cost of harvesting the same would have been $74, leaving a balance of $70; that they would have raised 160 bushels of oats at 40 cents per bushel, which would have amounted to $64, and the cost of harvesting the same was $29.88, making $34.02 clear; that 400 acres of grass at 25 cents an acre would have amounted to $100. This would have made a total damage of $286.52. The jury further found that 50 per cent. of the damage was caused by the acts of the parties other than the defendant, which would have made $143.26, the amount of the damage for which defendant was liable. The judgment is for $193.26. Apparently the judgment is excessive to the amount of $50. We believe that the judgment is excessive and will reform it by subtracting $50 therefrom and affirm it for $143.26.

Reformed and affirmed.

---

⚖═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes